UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUCKY'S DETROIT, LLC,

      Plaintiff,

                                        Case No. 09-14622

v.                                   HON. LAWRENCE P. ZATKOFF

DOUBLE L INC.,

      Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 25, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment [dkt 41] and

Plaintiff's Motion for Summary Judgment [dkt 42]. The motions have been fully briefed.[1] The Court

finds that the facts and legal arguments are adequately presented in the parties' papers such that the

decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D.

Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted.

Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary

_____

[1]Based on Plaintiff's request, the Court permitted each party to also file supplemental briefs, which have been filed by both parties. Furthermore, while Defendant titled its motion as a "Motion for Summary Judgment," Defendant's Motion actually only seeks partial summary judgment. Defendant's Motion and responsive briefs fail to address damages or other requested relief if Plaintiff is found to be liable for infringement of Defendant's trademarks. As such, the Court will treat Defendant's Motion as one for partial summary judgment.

Judgment is DENIED.

## II. BACKGROUND

This action involves Plaintiff's use of Defendant's federal and state registered trademarks "Lucky's" and "Lucky's Steakhouse" to identify Plaintiff's restaurant business. Plaintiff and Defendant each operate bar and dining style establishments in and around the Detroit metropolitan area. Plaintiff, Lucky's Detroit, LLC, a Michigan limited liability company, was formed in February of 2009 and operates three pub-style dining establishments under the name "Lucky's Pub & Grill" within the City of Detroit. One is located at 24200 Grand River Avenue near Telegraph. The second establishment is located in downtown Detroit at 2690 E. Jefferson Street. The establishment on Grand River has been in operation since 2008. The establishment on East Jefferson has been in operation since October of 2009. In May of 2010, during the pendency of this action, Plaintiff opened a third establishment at 25333 W. 12 Mile in Southfield. Waleed Mona is the manager of all three establishments and owns all interest in Lucky's Detroit, LLC.

Defendant, Double L, Inc., a Michigan corporation, operates five steakhouse-themed restaurants called "Lucky's Steakhouse". The restaurants are located in Imlay City, Davison, Fenton, Clio and Bay City, Michigan, which includes Oakland County, Genesee County, and Lapeer County. Defendant has registered two marks: "Lucky's" and "Lucky's Steakhouse". Defendant has registered its "Lucky's Steakhouse" mark with both the United States Patent and Trademark Office ("USPTO") and the State of Michigan.[2] The mark, "Lucky's", most relevant to this action, was registered (U.S. Trademark Registration #2,459,279) on June 12, 2001. Lucky Vasilakis is owner and officer of Defendant. He has a 100% stake in three of the Lucky's Steakhouses, and a 33% and

---

[2] Both marks were registered with the State of Michigan in November of 1999.

50% stake in the other two restaurants.

On October 20, 2009, Defendant notified Plaintiff in writing that it was using Defendant's registered mark and demanded that Plaintiff cease all use and reference to "Lucky's" in its advertising and marketing because Defendant's use and registration predated Plaintiff's use. Plaintiff filed a Complaint for Declaratory Judgment of Non-Infringement of Defendant's marks on November 25, 2009, seeking the Court to declare its rights and obligations with respect to Defendant's mark. Plaintiff's Complaint contains five counts. Count I seeks a declaration of non-infringement, alleging Plaintiff's use of "Lucky's" does not infringe Defendant's mark. Count II alleges that Plaintiff's use of "Lucky's" is not confusingly similar to Defendant's marks. Count III alleges that Defendant committed fraud on the USPTO when registering its marks.[3] Count IV alleges that Defendant committed fraud on the state of Michigan when registering its marks.[4] And, Count V alleges that Defendant abandoned its registered marks.

In answering the Complaint, Defendant asserted counterclaims: Count I for federal trademark infringement under the Lanham Act, 15 U.S.C. § 1114; Count II for false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. §1125(a); and Counts III–V for trademark infringement claims under state law.[5] Plaintiff defended against Defendant's Counterclaims and asserted three relevant affirmative defenses: (1) unclean hands; (2) estoppel; and (3) abandonment. In sum, the remaining counts before the Court are Plaintiff's Counts I and V and Defendant's Counterclaim Counts I and

---

[3] In resolving a motion to dismiss filed by Defendant, the Court dismissed two of Plaintiff's Counts (Counts II and III).

[4] The Court dismissed Count IV (fraud on the state of Michigan) for lack of federal subject matter jurisdiction.

[5] The Court dismissed Counts III, IV, and V of Defendant's Counter-Complaint for lack of federal subject matter jurisdiction.

II.

 After discovery closed, the parties filed the instant cross-motions for summary judgment. Defendant seeks summary judgment on Plaintiff's Counts I and V, its Counterclaim Counts I and II, and Plaintiff's affirmative defenses to Defendant's Counterclaims.  Plaintiff seeks a grant of summary judgment of non-infringement.  The central question posed by the parties' cross-motions for summary judgment is whether there is a genuine issue of material fact that Plaintiff's use of the mark "Lucky's" in relation to its restaurants is likely to confuse a consumer to believe that the restaurants are related to Defendant.

### III.  LEGAL STANDARD

 "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

 The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party discharges its burden by

"'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### IV. PLAINTIFF'S COUNT I AND DEFENDANT'S COUNTS I AND II

Plaintiff's Count I seeks a declaration that Plaintiff is not in violation of any rights Defendant has under 15 U.S.C. § 1114. Defendant's Counterclaim Count I asserts infringement against Plaintiff under 15 U.S.C. § 1114. Under 15 U.S.C. § 1114, a person may not use another person's mark without consent in commerce when such use is *likely to cause confusion* to the consumers. Defendant's Counterclaim Count II asserts false designation of origin under 15 U.S.C. § 1125(a). Pursuant to 15 U.S.C. § 1125(a), a person may not use a term, name, or symbol in connection with any goods or services that is *likely to cause confusion* as to the connection of such person with another person. 15 U.S.C. § 1125(a). Therefore, Plaintiff's Count I and Defendant's Counterclaim Counts I and II focus on whether Plaintiff is infringing Defendant's marks. As such, the Court will address whether Plaintiff is infringing Defendant's trademarks.

In order to establish trademark infringement, Defendant must be able to show:

5

a. the marks are valid and owned by Defendant;

b. that Plaintiff is using the same or similar mark; and

c. the use of the mark by Plaintiff is likely to cause confusion.

*Star Fin. Servs., Inc. v. Aastar Mortg. Corp.*, 89 F.3d 5, 9 (1st Cir. 1996).

## A.    DEFENDANT OWNS VALID MARKS

The first issue that must be addressed is whether the marks are valid and owned by Defendant. Defendant's marks are federally registered and have become incontestable pursuant to 15 U.S.C. § 1065. Incontestable status provides that:

> [T]he registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.

15 U.S.C. § 1115(b).

This presumption for incontestable status is only good to the extent that someone else has not used the mark in the same area, continuously, prior to the registration. *See* 15 U.S.C. § 1065. Ownership of a trademark is not determined by who has registered it first, but, rather, by who has used it first. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991). Thus, if a non-registrant can show by a preponderance of evidence that *he or she is the prior user*, then the registration may be invalidated. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.1996); *Vuitton et Fils S.A. v. J. Young Enters.*, 644 F.2d 769, 775–76 (9th Cir. 1981).

Plaintiff challenges Defendant's ownership of the mark. Plaintiff first argues that the owner listed on the federal registrations for "Lucky's" and "Lucky's Steakhouse" is "Double L, Inc.", rather than Defendant's correct name of "Double L Restaurant, Inc." Thus, Plaintiff concludes that

6

a genuine dispute of fact exists as to whether Defendant has standing to assert claims of infringement.  Plaintiff next argues that any rights Defendant has based on the federal registrations is abolished upon showing a third party with previously established rights in the marks.  As an example of such a third party, Plaintiff points to a restaurant operated in Fowlerville, Michigan, operating under the name "Lucky's Pub", that existed prior to Defendant's first use of "Lucky's."  Based on the Affidavit of Michael A. Gebus, he has owned and operated a bar and restaurant named "Lucky's Pub" since 1994 in Fowlerville, Michigan.

Defendant rebuts Plaintiff's assertion that an issue regarding Defendant's ownership of the marks exist.  Defendant asserts that the discrepancy between the registration and Defendant's name in this action resulted from Plaintiff misidentifying Defendant in its Complaint as "Double L, Inc.", rather than by its proper name of "Double L Restaurant, Inc."

The Court agrees with Defendant, finding Plaintiff's arguments frivolous.  First, Defendant correctly identified itself in its Answer and Counterclaim and throughout these proceedings.  Defendant also petitioned the USPTO to correct the error in its federal registration.  In 2008, the correction was made, listing "Double L. Restaurant, Inc." as the owner of the mark.  Second, the incontestable status of Defendant's marks is conclusive evidence that it has the right to use its marks.  While Plaintiff has provided evidence of a third-party using the mark, Plaintiff has not provided evidence that *it is a prior user*, and therefore, Plaintiff cannot contest the validity of Defendant's marks.

Accordingly, the Court finds that there is no genuine dispute of fact that Defendant is the owner of the valid marks "Lucky's" and "Lucky's Steakhouse".

**B.**    **LIKELIHOOD OF CONFUSION DUE TO USE OF SIMILAR MARKS**

7

The remaining two elements that Defendant must show are whether Plaintiff is using the same or similar mark and whether there is a likelihood of confusion. The Court analyzes these two elements under the factors set forth in *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1266 (6th Cir. 1985). A court must examine and weigh the following eight factors:

      1. strength of the senior mark;

      2. relatedness of the goods or services;

      3. similarity of the marks;

      4. evidence of actual confusion;

      5. marketing channels used;

      6. likely degree of purchaser care;

      7. the intent of defendant in selecting the mark; and

      8. likelihood of expansion of the product lines.

*Id.* These factors are interrelated and merely serve as a guide to determine the likelihood of confusion. *Homeowners*, 931 F.2d at 1107. While not all of the factors are relevant in every case, "[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630 (6th Cir. 2002) (citation omitted). Whether confusion exists "is a mixed question of fact and law," but the ultimate determination of whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion. *Id.* at 630–31.

**1.      Strength of the Mark**

The stronger a mark, the more likely there is to be confusion among consumers. This factor encompasses a "mark's distinctiveness and degree of recognition in the marketplace." *Homeowners*,

8

931 F.2d at 1107. In determining the strength of a mark the Court must consider several elements, including the mark's incontestable status, the type of mark, general customer recognition, and the number of other registered marks with the same name. *Autozone, Inc. v. Tandy Corp.*, 373 F.3d 786, 794 (6th Cir. 2004). The strength of a mark is a factual determination of the mark's distinctiveness.

When assessing the mark's strength, a court will place a trademark into one of four categories: generic, descriptive, suggestive, and fanciful or arbitrary. A generic term is the weakest type of mark. *Champions Golf Club, Inc. v. the Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996) (citations omitted). "A generic . . . term is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances." *Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984); McCarthy on Trademarks § 12:1 ("APPLE is a generic name for the edible fruit of the apple tree, but is a trademark for computers[.]").

 "[A] trademark is merely descriptive if it describes one, or more, of the following: 'the intended purpose, function or use of the goods . . . the class of users of the goods; a desirable characteristic of the goods; or the end effect upon the user.'" *DeGidio v. West Grp. Corp.*, 355 F.3d 506, 510 (6th Cir. 2004) (citing *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190 (6th Cir. 1988)). "A merely descriptive term . . . can, by acquiring a secondary meaning, *i.e.*, becoming 'distinctive of the applicant's goods' . . . become a valid trademark." *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir. 1996).[6] For example, " 'descriptive' marks

---

[6] In order to determine secondary meaning, the Sixth Circuit looks to the following factors: (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying. *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 311–12 (6th Cir. 2001). Whether a mark has acquired secondary meaning

either evoke some quality of the product (e.g., Easy Off, Skinvisible) or describe it directly (e.g., Super Glue)." *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 570 (6th Cir. 1987). With respect to incontestable status, the fact that a mark is registered on the principal register creates a presumption that the mark is not descriptive. *Hindu Incense v. Meadows*, 692 F.2d 1048, 1050 (6th Cir. 1982). Thus, the fact that the USPTO registered "Lucky's" and "Lucky's Steakhouse" on the principal register demonstrates that the mark is not merely descriptive.

The third type of category is "suggestive," which, as the word implies, "suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods." *Champions Golf Club*, 78 F.3d at 1117. A suggestive term is considered stronger than one that is merely descriptive, and does not require proof of secondary meaning. For example, CITIBANK, which connotes an urban or modern bank, or GOLIATH, for wood pencils, connoting a large size are suggestive terms. *Id.* Finally, fanciful and arbitrary marks are the strongest. "An 'arbitrary' mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached," such as CAMEL cigarettes or APPLE computers. *Little Caesar*, 834 F.2d at 571.

In this case, Defendant argues that its marks fall within the category of arbitrary marks. Defendant further argues that the marks are presumed strong marks because they have become incontestable. In response, Plaintiff argues that because Defendant's marks are based on its owner's first name, the mark is merely descriptive and Defendant must show secondary meaning to enforce

---

is a factual determination. *See Ashland Oil v. Olymco*, No. 94-5520, 1995 U.S. App. LEXIS 24652, at *4 (6th Cir. 1995).

it. Plaintiff relies on McCarthy on Trademarks § 13:2. Plaintiff also argues that the marks are not strong because they are incontestable due to widespread third party use of the marks.[7]

Plaintiff provides the Court with a list generated from the PTO website showing approximately 50 trademark registrations and applications for bar or restaurant services that include the name "Lucky's" or "Lucky." Plaintiff also provides the result of an internet search that Plaintiff conducted using Google. The results are based on Plaintiff's search for "Lucky's" bar and restaurants throughout the United States. The results indicate approximately 20 "Lucky's" bars or restaurants, including five that are located in Michigan. Plaintiff concludes that Defendant's "Lucky's" mark is "just one of hundreds (or thousands) of companies" which use "Lucky's" in connection with restaurants and bars. Because Defendant's mark is so weak, Plaintiff asserts that this factor is wholly determinative that there is no likelihood of confusion.

Turning to Plaintiff's argument that the mark "Lucky's" is merely descriptive, the Court disagrees. Plaintiff's argument is unsupported by its own legal citation to McCarthy on Trademarks. According to McCarthy, a first name is considered descriptive of the mark if "the public will likely perceive the term as a personal name, not whether the public knows 'the roster of corporate personnel.' " McCarthy on Trademarks § 13:2. Applying the principle from McCarthy on Trademarks, and relied on by Plaintiff, a reasonable jury would not conclude that the term "Lucky's" is a personal name. While Defendant's owner's first name is "Lucky," this first name is unusual and not thought of as a personal name for an individual. Furthermore, it is indisputable that Defendant's marks are incontestable because they were not successfully challenged within five years of

---

[7]Plaintiff concedes that Defendant may have a legitimate claim for trademark infringement based on the mark "LUCKY'S STEAKHOUSE." But, Plaintiff contends that it is operating under "LUCKY'S PUB & GRILLE."

registration. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 282 ("A trademark becomes 'incontestable' if it is not successfully challenged within five years of its registration."). Because the marks have incontestable status, Plaintiff may not defend against Defendant's claim of infringement on the grounds that the marks are merely descriptive. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 205 (1985) ("[T]he holder of a registered mark may rely on incontestability to enjoin infringement and . . . such an action may not be defended on the grounds that the mark is merely descriptive."). Thus, Plaintiff's argument that the marks fall within the descriptive category is foreclosed. Viewing Defendant's mark as whole, the Court finds that Defendant's mark is arbitrary. The mark "Lucky's" is not normally related to restaurant establishments. *See Little Caesar*, 834 F.2d at 571. Rather, it has become related to Defendant's restaurant establishments through Defendant's use and advertisement of its marks.

The Court's analysis of the strength of Defendant's mark does not stop at deciding that Defendant's marks fall within the category of arbitrary. The Court must also consider use of the mark by others and the general customers' recognition of the marks. "A mark is strong and distinctive when 'the public readily accepts it as the hallmark of a particular source.' " *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280 (internal quotations and citations omitted). Customers' recognition of the mark can be shown "when the mark is unique, when it has received intensive advertisement, or both." *Id.*

As to the evidence of general customers' recognition of the marks, according to Mr. Vasilakis, the "Lucky's" restaurants attract customers from throughout southeast Michigan based on the establishments' reputation for quality food and service. Plaintiff provides no evidence to refute this. Defendant's establishment in Bay City has been voted as the best steakhouse, best

12

seafood, and best restaurant for at least two years.  Prior to the opening of the Bay City steakhouse, customers in Bay City also contacted Defendant to open an establishment there.  Mr. Vasilakis has received similar requests from customers in Port Huron and Grand Blanc.  Defendant also advertises its marks through interstate billboards, state road-side signs, and word of mouth.  Defendant uses the marks in the operation of five restaurants throughout Southeast Michigan that are named "LUCKY'S STEAKHOUSE."  Thus, the Court finds that Defendant's marks appear to have strong public recognition in southeast Michigan.

As to use of the marks by others, Plaintiff presents evidence of a USPTO search result, a Google search result, and a pub-style establishment operated in Fowlerville, Michigan.  This evidence is insufficient to support Plaintiff's assertion that Defendant's mark is weak due to widespread third party use because Plaintiff has presented minimal evidence that the mark "LUCKY'S" is being used to render restaurant services in commerce.  As stated in 15 U.S.C. § 1127, "a mark shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services *and the services are rendered in commerce*."  15 U.S.C. § 1127 (emphasis added).  To weaken Defendant's marks, Plaintiff "must show what actually happens in the marketplace." *Autozone, Inc.*, 373 F.3d at 794 (quoting *Homeowners*, 931 F.2d at 1108).

With respect to Plaintiff's search of the USPTO records, the Sixth Circuit has stated that "merely showing the existence of marks in the records of the [USPTO] will not materially affect the distinctiveness of another's mark which is actively used in commerce."  *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 281 (quoting *Homeowners*, 931 F.2d at 1108).  Plaintiff's search results on Google also fail to indicate that the marks are being used to render services in commerce because it is not readily apparent from the results whether the establishments are currently doing business.

13

Plaintiff asserts that the Court should presume that the establishments are open because the listing of establishments were located on Google. According to Plaintiff, Google monitors whether an establishment is closed. Plaintiff relies on the fact that two specific examples in the search indicate that the restaurants either had closed, or were possibly closed. Aside from Plaintiff's conjecture, it provides no evidence as to the actual policies of Google and the manner to which the search results are compiled.

The Federal Circuit's holding in *Lloyd's Food Products, Inc. v. Eli's, Inc.*, 987 F.2d 766 (Fed. Cir. 1993), further supports the Court's conclusion. In *Lloyd's*, the Federal Circuit stated that "listing the name of the business, including the mark, in telephone directories and placing listings and advertisements in the yellow pages" constituted advertising and was some evidence of use. *Id.* at 768. Plaintiff's Google search results, however, are distinguishable from placing listings and advertisements in the yellow pages. Plaintiff has not shown that establishments listed as using the mark had to pay Google to be listed or perform some other affirmative act that signifies the establishments are using the mark "Lucky's" in commerce. The Court further finds no difference in a Google search result, without additional evidence, than a USPTO record's search, which the Sixth Circuit has rejected as actual evidence of use in the market without additional evidence. *See Daddy's Junky Music Stores, Inc.*, 109 F.3d at 281 (citation omitted).

Plaintiff also presented evidence that an establishment operating under the name "Lucky's Pub" in Fowerville, Michigan, existed prior to Defendant's use of the mark "Lucky's." While this evidence indicates third party use, a single instance does not indicate that use of the mark by others is widespread in southeast Michigan. Plaintiff, therefore, has failed to show sufficient third party use to weaken the strength of Defendant's mark.

14

Therefore, Defendant's mark is arbitrary and there has been advertising of the mark in the parties' geographic location.  There is insufficient evidence of widespread third party use and the general customers in southeast Michigan have recognition of the marks.  Thus, this factor weighs heavily in favor of Defendant.[8]

## 2.    Relatedness of the Goods

Services and goods "are 'related' not because they coexist in the same broad industry, but are 'related' if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company."  *Homeowners*, 931 F.2d at 1109.  The Sixth Circuit has identified three categories regarding the relatedness of the goods or services:

> First, if the parties compete directly, confusion is likely if the marks are sufficiently similar; second, if the goods or services are somewhat related, but not competitive, then the likelihood of confusion will turn on other factors; and finally, if the products are unrelated, confusion is highly unlikely.

*Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 624 (6th Cir. 2003); *see Daddy's Junky Music*

---

[8]Relying solely on the strength of mark factor, Plaintiff's Motion for Summary Judgment does not address the remaining *Frisch* factors.  Plaintiff, however, provides no legal support that the strength of mark factor is dispositive of the likelihood of confusion analysis.  The Court therefore will analyze all of the *Frisch* factors.  *See AutoZone*, 373 F.3d at 795 (stating that the fact a mark is strong does not mean the Court will not review other *Frisch* factors).

Additionally, Plaintiff's Motion for Summary Judgment is largely absent of cites to the record to support Plaintiff's assertions of fact.  In response to Plaintiff's Motion, Defendant has requested that the Court either disregard or strike all facts asserted by Plaintiff that lack evidentiary support pursuant to Fed. R. Civ. P. 56(e)(4).  The Court agrees with Defendant that Plaintiff has failed to follow the requirements of citing to the record when "a party is asserting that a fact cannot be or is genuinely disputed" as set forth in Fed. R. Civ. P. 56(c).  As such, the Court will disregard all facts asserted by Plaintiff that are genuinely disputed and unsupported by citations to the record. *See* Fed. R. Civ. P. 56(e) (stating a court's options when a party fails to properly support an assertion of fact).

*Stores Inc.*, 109 F.3d at 282.

Plaintiff argues that the parties' restaurants, in a generic sense are similar, but specifically offer two distinct types of establishments that differ in location and ambiance. Because of the differences, Plaintiff concludes that its establishments do not compete with Defendants. Thus, Plaintiff points to the second category identified by the Sixth Circuit and asserts that the services provided are somewhat related but that the parties are not competitive, so the determination of likelihood of confusion will turn on other factors.

Defendant argues that both parties operate restaurants with the mark "Lucky's" in the greater Detroit area. According to Defendant's comparison of the menus on the parties' websites, Defendant argues that both parties' restaurants are stand-alone establishments with similar menu offerings, and thus, the parties are directly competing.

The Court agrees with Defendant. While the Court recognizes simply equating two restaurants as competing may be too general, the Court finds that Defendant and Plaintiff offer similar goods and services to common customers. Mr. Vasilakis characterizes his restaurants as "casual dining with liquor," a "pub, bar and restaurant," and "a little bit of a sports bar, too." Mr. Mona describes Plaintiff's establishments as sports bar-style pub establishments in the cities of Detroit and Southfield. Both parties' establishments have numerous televisions that primarily play sports.

In reviewing the parties' menus, Defendant offers a lunch menu, including the typical American-style burgers and fries, sandwiches, and salads. Defendant's menu also provides chicken, steak, and seafood dinners. To accompany a customer's meal, Defendant offers a list of alcoholic and non-alcoholic beverages. Likewise, Plaintiff's menu offers a similar lunch menu as

16

Defendant's, along with similar dinner offerings, such as chicken, steak—highlighting their steaks as "LUCKY'S FAMOUS STEAKS"—and seafood.  The pricing on the parties' menus is also comparable.  Based on this evidence, the parties offer their goods and services to common customers.  A customer of Defendant's casual dining establishments that serve alcohol would also patronize Plaintiff's "sports bar-style pub" establishments.  Thus, the Court finds that the parties offer similar goods and services to common customers in the competing market of southeast Michigan.  Accordingly, the Court finds that this factor weighs in favor of Defendant.

**3.    Similarity of the Marks**

Similarity of marks is a factor of considerable weight.  *See Champions Golf Club*, 78 F.3d at 1119.  Courts must view marks in their entirety, not focusing on individual features. *Homeowners*, 931 F.2d at 1109; see also *Little Caesar*, 834 F.2d at 571 (emphasizing the "prominent" feature of a mark violates the principle against comparing component parts of "dissected" marks).  In doing so, the Court must determine whether a given mark would confuse a consumer when viewed alone, in order to account for the possibility that sufficiently similar marks "may confuse consumers who do not have both marks before them but who may have a 'general, vague, or even hazy, impression or recollection' of the other party's mark."  *Wynn Oil*, 839 F.2d at 1188 (citation omitted).

Here, Plaintiff argues that because "Lucky's" restaurants are so commonplace, consumers look to other specific differences between the establishments to distinguish them.  The Court finds Plaintiff's argument irrelevant to the scope of this factor.  As held by the Sixth Circuit, the Court is instructed to review the marks as a whole.  S*ee Daddy's Junky Music Stores, Inc.*, 109 F.3d at 283 ("Courts must view marks in their entirety and focus on their overall impressions, not individual

17

features.").  In reviewing the parties' marks as a whole, the Court finds that the parties use similar marks.  Turning to Plaintiff's use of "Lucky's", the mark is all capital letters in block type-font.  The word "Lucky" and "s" are separated by an apostrophe.  Plaintiff uses the mark as its principal identifier on its menus, establishments, a bus, and its sales receipts.  Likewise, Defendant uses "Lucky's" in all capital letters in bold type-font, and separates the letters "Lucky" and "s" with an apostrophe.[9]  Thus, a consumer would be confused that Plaintiff's establishment is related to Defendant  when looking at Plaintiff's establishment and only having a "general, vague, or even hazy, impression or recollection" of Defendant's marks.  Accordingly, this factor weighs in favor of Defendant.

**4.      Evidence of Actual Confusion**

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Wynn Oil*, 839 F.2d at 1188.  A lack of such evidence, however, is rarely significant, and the factor "is weighted heavily only when there is evidence of past confusion."  *Id.*  While evidence of actual confusion is not necessary, Defendant has presented such evidence.  First, Mr. Vasilakis received phone calls from Defendant's customers regarding a February 8, 2010, shooting that occurred at Plaintiff's Grand River location.  The news report detailing the incident was titled "Man Killed Outside Lucky's in Detroit."  As a result, Mr. Vasilakis received calls from customers believing that the shooting occurred at one of Defendant's restaurant.  Second, Mr. Vasilakis states that he is regularly asked by customers if he opened the restaurants operating under the name "Lucky's Pub

---

[9]  The Court notes that Plaintiff uses a shamrock in place of an apostrophe in the term "Lucky's" on its menu.  The Court, however, finds that a consumer viewing the mark "Lucky's", without reference to Defendant's mark, would not discern this difference in light of the overall appearance of the parties' uses of "Lucky's."

& Grille." Plaintiff argues that Defendant's evidence is insignificant, and to the extent that Mr. Vasilakis is stating what his customers told him, the customers' statements are hearsay.

The Court finds Defendant's evidence of actual confusion is significant because the parties have been competing in the market for a short period of time. Plaintiff's first establishment had only been using the mark since 2008, and the third establishment was not opened until after this action began. If Plaintiff and Defendant had been competing in the market for a longer period of time, the evidence may be insignificant, however, that is not the case here. *See Homeowners*, 931 F.2d at 1110 (explaining that "the existence of only a handful of instances of actual confusion after a significant time or a significant degree of concurrent sales under the respective marks may even lead to an inference that no likelihood of confusion exists"); *Checkpoint Sys., Inc. v. Check Point Software, Tech., Inc.*, 269 F.3d 270, 299 (3rd Cir. 2001) (explaining that the evidence of actual confusion was insignificant because of "the size of these companies, and the large number of e-mails, customer inquiries, and other communications they receive on a daily basis"). The Court finds that the two instances of actual confusion are material. Based on the phone calls, customers were actually confused as to whether Plaintiff's establishments were related to Defendant's establishments.

As to the argument that the evidence is hearsay, Defendant is correct to point out that such statements are not asserted to show the truth of the matter asserted, but instead to show the state of mind of the customers. Thus, the Court is permitted to analyze the evidence of Defendant's customers based on Mr. Vasilakis's Affidavit. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 452 F. Supp. 2d 772, 786 (W.D. Mich. 2006) ("Courts have generally held that testimony regarding statements by customers evidencing confusion are admissible either because they are not hearsay

19

or because they are admissible under Fed. R. Evid. 803(3) to show the declarant's state of mind, i.e.,

confusion between two trademarks."); *Midwest Guar. Bank v. Guar. Bank*, 270 F. Supp. 2d 900, 917

( E.D. Mich. 2003) (overruling hearsay objections because the third parties' statements were offered

to show the declarant's confusion).  Accordingly, this factor weighs in favor of Defendant.

## 5.    Marketing Channels Used

Under this factor, the Court must analyze the marketing channels employed by the parties.

As the Sixth Circuit explained: "Where the parties have different customers and market their goods

or services in different ways, the likelihood of confusion decreases."  *Therma-Scan, Inc.*, 295 F.3d

at 636 (citing *Homeowners*, 931 F.2d at 1110).

Defendant asserts that its customers are from southeast Michigan, traveling even from

locations such as Port Huron to eat at its establishment in Imlay City.  As a form of advertisement,

it relies on word of mouth and provides customers a takeout menu, if requested.  Defendant also

advertises on the freeways adjacent to its establishments with large billboards and on Michigan

road-side information signs. Plaintiff, however, asserts that the parties' customers and marketing

channels are different.  While providing no evidence to support the assertions that the parties'

customers are different, Plaintiff provides evidence that it advertises through radio placement,

including WJLB 92.3 and Hot 102.7 in Detroit.  The radio advertisements run multiple times a day.

Plaintiff also uses fliers several times a month and advertises by word of mouth.  Both parties also

have websites that provide links to their menus and other information, such as locations and special

events.

With regard to the customers of the parties' establishment, neither party has provided

extensive demographic research to support their claims.  However, as the Court discussed when

20

analyzing the relatedness of the parties' goods and services, the parties' customers are common.

As to the advertising channels used, Defendant relies most significantly on expressway billboards and word of mouth. Plaintiff relies on word of mouth and on advertising through print ads and radio placement. Neither party appears, nor alleges, to extensively rely on their websites. *See Therma-Scan, Inc.*, 295 F.3d at 637 ("[T]he availability of information about the parties' goods and services on the Internet [does not] automatically lead to the conclusion that they use common marketing channels."). While Plaintiff advertises by radio and print ads, which Defendant does not, the Court does not find the parties' advertising differences significant. And, based on the commonality between their customers, the Court finds that this factor weighs slightly in favor of Defendant.

## 6.    Likely Degree of Purchaser Care

With respect to the likely degree of purchaser care, courts use the standard of a typical buyer exercising ordinary caution. *Homeowners*, 931 F.2d at 1111. "A higher degree of care, in contrast, is appropriate where the buyer in question has a particular expertise or sophistication, or is making an expensive or unusual purchase." *Therma-Scan, Inc.*, 295 F.3d at 638. Here, the record does not support a finding that consumers at the parties' restaurants have a particular expertise or sophistication. Purchasing food at the parties' restaurant is not generally an expensive or unusual experience. The Court therefore finds applying the standard of a buyer exercising ordinary caution appropriate to this action.

## 7.    Intent in Selecting the Mark

In considering this factor, the Court must determine whether "the mark was adopted with the intent of deriving benefit from the reputation of the plaintiff." *Frisch's Restaurants Inc.*, 670 F.2d

21

at 648. "Circumstantial evidence of copying, particularly 'the use of a contested mark with knowledge of the protected mark at issue,' is sufficient to support an inference of intentional infringement where direct evidence is not available." *Therma-Scan, Inc.*, 295 at 638–39 (citations omitted).

Defendant asserts that the Court can infer from Plaintiff's failure to perform a trademark search prior to using "Lucky's" that Plaintiff intentionally copied the mark. Plaintiff refutes this inference, relying on *Therma-Scan, Inc.* In *Therma-Scan, Inc.*, the court stated that a "[p]laintiff is incorrect to the extent that it is suggesting that the mere prior existence of a registered mark demonstrates that the alleged infringer intentionally copied that mark; otherwise, presumably all trademark infringement cases would result in a finding of intentional copying." *Id.* (quoting *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 286–87).

The Court rejects Defendant's assertion that the Court may infer Plaintiff has intentionally copied Defendant's marks. As Plaintiff's cited case law explains, "the mere prior existence of a registered mark" does not demonstrate that Plaintiff intentionally copied Defendant's marks. *Id.* Defendant has produced no evidence, either direct or circumstantial, to support a finding that Plaintiff intentionally copied Defendant's mark. Accordingly, the Court finds that this factor is neutral.

**8.     Likelihood of Expansion of Product Lines**

This factor is not relevant in actions where the parties do not intend to expand their goods and services. If the parties do intend to expand, evidence of such expansion from *either* party will support a finding of likelihood of confusion. *Therma-Scan, Inc.*, 295 F.3d at 639. As such, the Court finds this factor is relevant to this action. As to Defendant, Mr. Vasilakis testified that he has

22

future plans to expand the use of his mark, including opening establishments in Brighton, Novi, East Lansing, and Greektown in Detroit. Mr. Vasilakis also stated that he opens a new restaurant every two years, and so he plans on opening a new restaurant soon. As to Plaintiff, Mr. Mona stated that he is in the process of opening new restaurants, including an anticipated opening of a restaurant in Romulus in late September, 2011.[10] In total, Mr. Mona plans on opening seven restaurants, including locations such as Flint, Grand Rapids, and Lansing. In light of this evidence, not only do both parties intend to expand use of their restaurants, but the parties intend to expand into the same areas. For instance, while Mr. Vasilakis is interested in opening a restaurant in East Lansing, Mr. Mona is interested in opening a restaurant in Lansing. Mr. Mona also intends to open a restaurant in Flint, of which Defendant has two establishments near by—one in Fenton and one in Davison. Accordingly, this factor weighs in favor of Defendant, *i.e.*, finding a likelihood of confusion.

9.   **Weighing the Factors**

In weighing the *Frisch* factors, Defendant has a relatively strong mark, the restaurant establishments are similar, the parties' marks are similar, the level of consumer care is low, there is evidence of actual confusion, and both parties intend to further expand their restaurants into similar locations. As such, the Court finds as a matter of law that relevant customers are likely to believe that the parties' establishments are related in some way.

Accordingly, the Court finds no genuine dispute of fact that Plaintiff's use of "Lucky's" is infringing Defendant's marks. Having determined that Plaintiff infringed Defendant's marks, the Court grants Defendant summary judgment on its Counterclaims Counts I and II and Plaintiff's Count I. The Court now turns to Plaintiff's Count V and Plaintiff's Affirmative defenses.

_____

[10]Based on the record, the Court is not aware if this restaurant has been opened.

23

## V.  PLAINTIFF'S COUNT V, AFFIRMATIVE DEFENSE OF ABANDONMENT, AND REQUEST FOR CANCELLATION OF DEFENDANT'S MARKS BASED ON ABANDONMENT

In Count V of Plaintiff's Complaint, it alleges that "Defendant has knowingly permitted third parties to use the mark it allegedly owns without license and without control thereby constituting an abandonment of the 'Lucky's' mark."  Likewise, Plaintiff asserts similar allegations of abandonment as a defense to Defendant's Counterclaim of infringement.  Plaintiff further requests that the Court cancel Defendant's marks based on abandonment.

The principle of "abandonment" is set forth in 15 U.S.C. § 1127 as follows:

A mark shall be deemed to be "abandoned" if either of the following occurs:

(1) When its use has been discontinued with [the] intent not to resume such use.  Intent not to resume may be inferred from circumstances.  Nonuse for 3 consecutive years shall be prima facie evidence of abandonment.  "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

(2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark.  Purchaser motivation shall not be a test for determining abandonment under this paragraph.

15 U.S.C. § 1127.

With respect to cancelling Defendant's marks based upon abandonment, a petition to cancel the mark may be filed at any time if the registered mark has been abandoned.  15 U.S.C. § 1064(3).  Uncontrolled licensing of the mark by its owner can cause the mark to lose its significance and be deemed abandoned.  *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 764 (6th Cir. 2005).

Plaintiff asserts that a genuine dispute of material fact exists as to Defendant's licensing of

24

its trademarks.  Plaintiff argues that because Defendant has failed to produce evidence of any licensing agreements, a reasonable jury could conclude that they do not exist and Defendant's marks may not be used as a source-identifier.  Plaintiff also argues that two of the establishments are not wholly owned by Mr. Vasilakis.  Plaintiff further requests that the Court issue an order cancelling Defendant's trademark registration based on Defendant's purported uncontrolled licensing of its marks.

The Court concludes that Plaintiff's Count V and affirmative defense of abandonment fails as a matter of law under 15 U.S.C. § 1127.  The record does not show that Defendant has: (a) discontinued use of the "Lucky's" name, or (b) allowed "Lucky's" to become the generic name for restaurant services.  The Court further denies Plaintiff's request to cancel Defendant's marks.  As Defendant has aptly pointed out, the five "Lucky's Steakhouse" restaurants and Defendant are related companies within the meaning of 15 U.S.C. §1055 because they are all under the common ownership and control of Mr. Vasilakis.  15 U.S.C. §1055 states:

> Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public.  If first use of a mark by a person is controlled by the registrant or applicant for registration of the mark with respect to the nature and quality of the goods or services, such first use shall inure to the benefit of the registrant or applicant, as the case may be.

15 U.S.C. §1055.

Applying 15 U.S.C. § 1055 to Plaintiff's argument that Defendant and the "Lucky's Steakhouse" restaurants are separate, the Court finds that Defendant and the restaurants are "related companies."  According to his Affidavit, Mr. Vasilakis is involved with the restaurants as follows:

25

(1) he oversees the operation of each restaurant, including use of the "Lucky's" mark, signage, advertising, fundraising and the content and appearance of menus;

(2) the 100 percent owner of Defendant and three of the Lucky's Steakhouse restaurants;

(3) 33 and 50 percent ownership in the remaining two restaurants; and

(4) an officer of each of the Lucky's Steakhouse restaurants.

Such involvement justifies a finding that the five restaurants are "related companies." *Letica Corp. v. Sweetheart Cup Co.*, 805 F. Supp. 482, 487 (E.D. Mich. 1992) ("A related company is any company which is controlled by the trademark owner as to the quality of the goods sold under the trademark."). As related companies, the five restaurants are entitled to the benefits of the registrations of the marks. *See* 15 U.S.C. §1055 ("Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration."). Furthermore, the evidence indicates that Mr. Vasilakis exercises reasonable control over the use of the mark in regard to the "Lucky's" restaurants. *See Tumblebus Inc.*, 399 F.3d at 764. Consequently, Plaintiff has not met the burden of proving that cancellation of Defendant's marks is warranted. Accordingly, Defendant is granted summary judgment on Plaintiff's Count V (declaration of abandonment), and affirmative defense of abandonment. The Court further denies Plaintiff's request to cancel Defendant's marks.

## VI. PLAINTIFF'S REMAINING AFFIRMATIVE DEFENSES

### A. UNCLEAN HANDS

"The doctrine of unclean hands is 'a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.' " *The Scooter Store, Inc.*

26

*v. Spinlife.com, LLC*, 777 F. Supp. 2d 1102, 1113 (S.D. Ohio 2011) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)) .

Plaintiff asserts that its affirmative defense of " 'unclean hands' should not be dismissed because there remain material issues of fact regarding Defendant's procurement of federal trademark registrations in light of its knowledge of prior-registered marks."  Plaintiff also references an exchange that occurred between the parties' counsel during the deposition of Mr. Vasilakis as evidence of unclean hands.  During the exchange, Plaintiff's counsel asked Mr. Vasilakis, "To the best of your recollection, if you had been aware of those companies or food service establishments that had the name Lucky's before you, would you still have filed your trademark application?"  Defendant's counsel objected and informed Mr. Vasilakis not to answer based on attorney/client privilege.

The Court finds Plaintiff's assertions unconvincing.  There is no evidence that Defendant proceeded with inequity or bad faith in adopting, using and registering "Lucky's" and "Lucky's Steakhouse".  As to the exchange between the parties' counsel, Plaintiff provides no legal authority that Defendant's litigation tactics arise to unclean hands in this case.  Accordingly, Defendant is granted summary judgment on Plaintiff's affirmative defense of unclean hands.

**B.   EQUITABLE ESTOPPEL**

As to the affirmative defense of equitable estoppel, Plaintiff must show that it "acted in reliance on the actions of [Defendant], with the result that the party seeking to invoke estoppel be injured by his own conduct without the estoppel."  *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*,  936 F.2d 889, 895 (6th Cir. 1991).  Plaintiff must demonstrate "utmost good faith."  *Id.*

Plaintiff asserts that its defense of equitable estoppel should not be dismissed because

27

Defendant has negatively impacted the business opportunities of Plaintiff by claiming that Plaintiff has infringed Defendant's marks. The Court finds that Defendant's action in filing counter claims against Plaintiff, asserting infringement of Defendant's marks, is irrelevant to the doctrine of equitable estoppel.

Plaintiff next asserts that Defendant is estopped from asserting infringement because: (1) a third party used the mark "Lucky's Pub" in Fowlerville, Michigan, prior to Defendant's trademark registrations; and (2) after an initial rejection of Defendant's registrations based on prior third party use of the marks, Defendant's counsel argued to the USPTO that Defendant should be granted a narrow scope of exclusivity as to its marks.

These assertions also fail. Plaintiff fails to show that third party use of the marks prior to Defendant's registration is relevant to the doctrine of equitable estoppel. Plaintiff further fails to show that counsel's representations to the USPTO are relevant. Furthermore, the doctrine of equitable estoppel requires that Plaintiff relied on the actions of Defendant, which due to the reliance has now caused harm to Plaintiff. Plaintiff, however, fails to show that it relied on any of these actions of Defendant which resulted in injury to Plaintiff. Plaintiff did not conduct a trademark search before using "Lucky's" as its principal identifier of its establishment and even opened its third location after Defendant filed a counterclaim for trademark infringement in this action. Accordingly, the Court grants Defendant summary judgment on Plaintiff's affirmative defense of equitable estoppel.

## VII. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment [dkt 41] is GRANTED.

28

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [dkt 42] is DENIED.

IT IS FURTHER ORDERED that the previously adjourned Final Pretrial/Settlement Conference is scheduled for April 17, 2012, at 9:30 A.M., 526 Water Street, Port Huron, MI.  All counsel must be present, as well as the clients and/or those with full settlement authority.  The proposed pretrial order, along with joint-agreed upon jury instructions, shall be submitted to the Judge's Chambers at the Final Pretrial/Settlement Conference.  If necessary, the case will be scheduled for a trial date at the conference.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  January 25, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 25, 2012.

S/Marie E. Verlinde
Case Manager
(810) 984-3290

29